# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF MASSACHUSETTS
# WESTERN DIVISION

| | | |
|---|---|---|
| In re: | ) ) ) | Chapter 13<br>Case No. 17-30213 |
| LAURA MCLAIN, | ) ) ) | |
| Debtor. | ) ) | |
| LAURA MCLAIN | ) ) ) | Adversary Proceeding<br>No. 18-03028 |
| Plaintiff, | ) ) ) | |
| v. | ) ) | |
| CITIZENS BANK, N.A., | ) ) ) | |
| Defendant. | ) ) | |

## MEMORANDUM OF DECISION

Before the Court is a motion (the "Motion") filed by Citizens Bank, N.A. ("Citizens") seeking dismissal of an adversary proceeding filed by plaintiff Laura McLain, the debtor in the underlying Chapter 13 bankruptcy case (the "Debtor"). In the complaint, the Debtor alleges that Citizens, the holder of a second mortgage on the Debtor's residence, is liable for a variety of tort and consumer protection claims by, *inter alia*, refusing to accept payments from the Debtor, misrepresenting the effect of a co-obligor's prior bankruptcy discharge on the status of the mortgage loan, and failing to offer the Debtor a loan modification or engage in other loss mitigation negotiations in good faith. Because the Court concludes that the complaint alleges facts sufficient to support some, but not all, of the claims, the Motion will be granted in part and denied in part.

1

I.      FACTS AND TRAVEL OF THE CASE

The following recitation of facts is taken from the allegations in the complaint, matters of record in the underlying bankruptcy case, documents referenced in and attached to the complaint, and other matters of which the Court may take judicial notice.[1]

In 2006, the Debtor and Maura Supinski ("Supinski") executed a mortgage in favor of Citizens to secure repayment of a $65,000 home equity line of credit. Although Supinski was the sole obligor under the promissory note (the "Note"), both the Debtor and Supinski, as co-owners of the collateral property, signed the mortgage (the "Mortgage"). Supinski has since vacated the property, but the Debtor has continued to reside there as her primary residence. Several years later, in March 2014, Supinski filed a voluntary petition under Chapter 7 of the United States Bankruptcy Code.[2] Shortly thereafter, in July 2014, Supinski received a discharge pursuant to § 727 of the Code, relieving her of personal liability under the promissory note. *Pratt v. Gen. Motors Acceptance Corp. (In re Pratt)*, 462 F.3d 14, 17 (1st Cir. 2013). ("Although the unsecured portion of a secured creditor's claim may be discharged in a chapter 7 or 13 case, its lien in the collateral normally survives the bankruptcy proceeding and the discharge, and is enforceable in accordance with state law.")

According to the Debtor, she continued to make payments on the Note at the local Citizen's branch in Northampton, Massachusetts. However, the Debtor says that "sometime after"

---

[1] While a court generally may not consider documents that are extrinsic to the complaint in ruling on a motion to dismiss, there are exceptions "for documents the authenticity of which are not disputed by the parties; for official public records; for documents central to plaintiffs' claim; or for documents sufficiently referred to in the complaint." *Alt. Energy, Inc. v. St. Paul Fire & Marine Ins. Co.*, 267 F.3d 30, 33 (1st Cir. 2001) (quoting *Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993)).

[2] *See* 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code" or the "Code").

2

Supinski's bankruptcy discharge, she was told by a Citizen's branch employee that "the mortgage was discharged, that the debt need not be paid, that no adverse action would be taken, and that Citizens Bank was not prepared to accept further payments." Complaint at 2 ¶ 11. In fact, in a March 2017 letter signed by Citizens employee Lisa Blanchette, Blanchette acknowledged that she had

> contacted Colleague Assist Line with regards to [the home equity loan] and was advised by Citizens Bank Loan Department (CAL) that this loan was in Bankruptcy and Discharged and that [the Debtor] did not need to continue to pay on this loan. [The Debtor] had been paying on the loan since [Supinski] took it out back in 2006.

(the "Blanchette letter"). Matters were not resolved at the branch level and ultimately escalated beyond branch employees after the Debtor learned that Citizens had accelerated the Note due to nonpayment and intended to proceed with a foreclosure of the property. In a letter dated July 19, 2016, Tiffany Haines ("Haines"), a "Customer Resolution Senior Advocate," advised the Debtor to contact a "Foreclosure Attorney" at "NDS" at a toll free telephone number. That letter stated, in relevant part:

> I am writing in response to your concern that was escalated to this department for review and response on June 28, 2016.
> . . .
>
> It is my understanding that you expressed dissatisfaction in regards to the status of the property located at the above address. It was mentioned that your name is listed on the title for the property. You were upset that someone at the branch advised you that you were not obligated to pay the back payments due for the loan on the property that is not in your name.
>
> Please know that only person [sic] obligated to pay the outstanding balance on the property debt is the person listed on the loan. If a property is in foreclosure, you may pay the outstanding balance. You must contact the Foreclosure Attorney, NDS . . . to reinstate the loan and then try to refinance.
> . . .

3

In a subsequent letter to Debtor, dated August 22, 2016, Haines offered no further assistance, again reiterating that the Debtor "must speak with the Foreclosure Attorney of National Default Services (NDS)."[3]

On March 28, 2017, one day prior to a scheduled foreclosure sale of the property, the Debtor commenced the underlying Chapter 13 bankruptcy case, staying the foreclosure pursuant to § 362(a). On December 7, 2018, Debtor filed the instant adversary proceeding against Citizens, raising several tort and consumer protection claims based on Citizens' failure to accept payments, alleged misrepresentations regarding the status of the mortgage and the effect of nonpayment, and failure to resolve the issues with the Debtor through a loan modification. Citizens responded with its Motion, seeking dismissal of the complaint for failure to state a claim and arguing that this Court lacks jurisdiction. After a hearing on the Motion (the "Hearing"), the Court took the matter under advisement.

II.   POSITIONS OF THE PARTIES

As initially filed, the Debtor's complaint contained 9 claims. At the Hearing, however, the Debtor voluntarily dismissed 4 of the counts, each of which were premised on Citizens' alleged debt collection violations under state and federal statutes and regulations.[4] Remaining for

---

[3] It is not clear from Haines's letters or Citizens' Motion who or what "NDS" is or whether they are affiliated with Citizens. According to the Debtor, NDS is "a national organization that assists mortgage holders in the foreclosure of properties." Complaint at 3 ¶ 12.

[4] While unable to recall the exact count numbers at the Hearing, the Debtor's attorney conceded that the counts reliant on statutory and regulatory provisions regulating certain debt collectors appeared inapplicable to Citizens under the facts of this case and said in open Court that the Debtor was withdrawing those counts without prejudice. Under Fed. R. Civ. P. 41(a)(1)(A)(i), a plaintiff has the right to voluntarily dismiss an action without the need for Court approval or the consent of the opposing party, so long as neither "an answer or a motion for summary judgment" has been filed. Because "[i]t is clear that a motion to dismiss under Fed. R. Civ. P. 12(b) is not equivalent to an answer or motion for summary judgment," *United Sur. & Indem. Co. v. Yabucoa Volunteers of Am. Elderly Hous., Inc.*, 306 F.R.D. 88, 91 (D.P.R. 2015) (citing *Matta-Ballesteros v. United States*, 66 F.3d 306 (1st Cir. 1995); *Universidad Central del Caribe, Inc. v.*

4

consideration are the following claims: Count I: Breach of Contract, Count II: Breach of Obligation of Good Faith, Count III: (Additional) Breach of Obligation of Good Faith, Count IV: Misrepresentation, and Count V: [Violation of] Massachusetts General Laws Chapter 93A.

With regard to each of the Debtor's claims, Citizens first argues that the complaint should be dismissed for lack of jurisdiction, as none of the Debtor's claims constitute "core" proceedings under 28 U.S.C. § 157(b)(2)(C), rendering this Court barred from entering final orders or judgments with respect to any of the Counts raised in the complaint. In response, the Debtor asserts that even if the complaint raises only "non-core" claims, the bankruptcy court is nonetheless empowered to "hear" the claims and submit proposed findings of fact and conclusions of law to the district court, which may be reviewed *de novo* for final determination.

With regard to the specific claims raised in the complaint, Citizens first maintains that the Debtor has failed to provide the factual or legal support necessary to maintain her claims for breach of contract and breach of the implied covenant of good faith and fair dealing in Counts I and II of the complaint. Through those counts, the Debtor contends that the execution and acceptance of the Mortgage created a contractual relationship between Citizens and the Debtor, giving rise to fiduciary obligations as well as the duty of good faith and fair dealing under Massachusetts law. According to the Debtor, Citizens breached those duties by, among other things, failing to provide accurate information to the Debtor (including failing to warn of the possibility of foreclosure in the event of nonpayment) and by failing to accept the Debtor's payments under the Note. But

---

*Liaison Comm. on Med. Educ.*, 760 F.2d 14, 17 (1st Cir. 1985); James W. Moore et al., *Moore's Federal Practice* § 41.33 [2(e)(5)(c)(viii)(A)]; 9 Charles Alan Wright, et al., *Federal Practice and Procedure* § 2363 n.37 (3d ed.)), and because "to be effective, withdrawal of a claim need not take the particular form of a document captioned 'Notice of Voluntary Dismissal,'" *Webb v. Green Tree Servicing, LLC*, 2011 WL 6141464, *12 (D. Md. Dec. 9, 2011), the Court construes the Debtor's "withdrawal" of those claims as a voluntary dismissal under Fed. R. Civ. P. 41(a)(1)(A)(i). Accordingly, Citizens' request to dismiss Counts VI through IX is moot.

5

Citizens says (in addition to its arguments related to the complaint's lack of specificity) that Citizens and its employees made no inaccurate statements to the Debtor, and that owing to Supinksi's bankruptcy discharge and the fact that the Debtor "was not liable on the loan," Citizens was not obligated to accept payments from the Debtor at any branch location.

In Count III of the complaint, the Debtor raises an "additional" claim for "breach of the obligation of good faith," arguing that due to the contractual relationship between Citizens and the Debtor (which gave rise to "covenants of good faith and fair dealing, and a similar fiduciary obligation"), Citizens' failure and refusal to provide loan modification alternatives constituted a breach of Citizens' contractual and fiduciary duties. In its Motion, Citizens responds that it had no fiduciary obligations toward the Debtor and that the Debtor failed to provide any legal support for the allegation that it was required to provide the Debtor with "modification alternatives." Furthermore, according to Citizens, due to the fact that the Debtor was not a party to the Note, it was unable to offer her a loan modification.

Count IV ("Misrepresentation") and Count V (violations of the Massachusetts consumer protection statute, Mass. Gen. Laws ch. 93A) are largely premised on the same allegation that Citizens is liable for its misrepresentations that the Debtor was not obligated to make payments on the Note, that the Mortgage was discharged, and that there would be no adverse consequences on account of the Debtor's failure and/or inability to make the payments due under the note.[5] According to Citizens, however, it cannot be liable for alleged misrepresentations with regard to the Note or Mortgage because no misrepresentations were in fact made. According to Citizens, the Debtor was accurately informed that the Debtor was not obligated to make loan payments since she was not a loan borrower and that due to Supinski's bankruptcy discharge, any liability under

---

[5] In Count V, the Debtor again alleges, in perfunctory fashion, that Citizens' failure to offer loss mitigation alternatives and/or a loan modification also constitutes a violation of Mass. Gen. Laws ch. 93A.

6

the Note (but not the Mortgage) had been discharged. Furthermore, even if the Debtor had been told that the Mortgage was discharged, Citizens says, any reliance on that statement was not reasonable or justified since a review of the applicable registry of deeds would confirm that the mortgage had not been released.

III.   DISCUSSION

    A.   Fed. R. Civ. P. 12(b)(1): Dismissal for Lack of Jurisdiction

Citizens first argues that the Court should dismiss the Debtor's complaint pursuant to Federal Rule of Civil Procedure 12(b)(1), made applicable to this adversary proceeding pursuant to Federal Rule of Bankruptcy Procedure 7012(b), on grounds that the Court "lacks subject matter jurisdiction and constitutional jurisdiction" over the claims raised in the Complaint. That argument misapprehends the statutory framework and case law relevant to the Court's jurisdiction over the Debtor's claims.

28 U.S.C. § 1334 provides the district courts with jurisdiction over "cases under title 11" and "civil proceedings arising under title 11, or arising in or related to cases under title 11." As 28 USC § 157(a) allows, the District Court for the District of Massachusetts has referred all bankruptcy matters to the bankruptcy courts in the district. *See* LR, D. Mass. 201. Bankruptcy judges "may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11," 11 U.S.C. § 157(b), and may also "hear a proceeding that is not a core proceeding but that is otherwise related to a case under title 11," 11 U.S.C. § 157(c).

Citizens is correct that the claims raised by the Debtor are non-core proceedings, because they are not created by provisions of the Bankruptcy Code and could have been brought in a nonbankruptcy court of appropriate jurisdiction had the bankruptcy case not been filed. *See New*

7

*England Power & Marine, Inc. v. Town of Tyngsborough (In re Middlesex Power Equip. & Marine, Inc.),* 292 F.3d 61, 68 (1st Cir. 2002); (citing *Wood v. Wood (In re Wood)*, 825 F.2d 90 at 96 (5th Cir. 1987)). The claims *are*, however, "related to" the Debtor's bankruptcy case. "Related to" proceedings are those which "potentially have some effect on the bankruptcy estate, such as altering debtor's rights, liabilities, options, or freedom of action, or otherwise have an impact upon the handling and administration of the bankrupt estate." *In re G.S.F. Corp.,* 938 F.2d 1467, 1475 (1st Cir. 1991) (quoting *Smith v. Commercial Banking Corp. (In re Smith),* 866 F.2d 576, 580 (3d Cir. 1989)); *see also In re Middlesex Power,* 292 F.3d at 68.

Although the Debtor's claims would all exist outside of bankruptcy, the outcome of the adversary proceeding has a potential effect on the bankruptcy estate. As prepetition causes of action, the claims became property of the bankruptcy estate upon commencement of the case. *See* 11 U.S.C. § 541(a); *In re Mark Bell Furniture Warehouse, Inc.*, 992 F.2d 7, 9 (1st Cir. 1993) (debtor's prepetition cause of action became property of the bankruptcy estate upon filing). Any monetary damages recovered by the Debtor may be available to provide a dividend to unsecured creditors in the case. Furthermore, the Debtor's request that the Court void and discharge the mortgage would impact the appropriate treatment of Citizens' claim for purposes of plan confirmation pursuant to 11 USC § 1325(a)(5). Accordingly, while the Debtor's claims are non-core, they are all "related to" the bankruptcy estate.

"Whether a proceeding is core or non-core affects the power of the bankruptcy judge to issue a final order or judgment, but not the ability to hear a proceeding." *In re Mec Steel Bldgs., Inc.*, 136 B.R. 606, 610 (Bankr. D.P.R. 1992) (quoting *In re Reed,* 94 B.R. 48 (E.D. Pa. 1988)). The Supreme Court's decision in *Stern v. Marshall*, 564 U.S. 462 (2011) does not change this analysis – there, the Court held only that, with regard to certain matters denominated as "core"

8

under 28 U.S.C. § 157(b), the bankruptcy court below lacked constitutional jurisdiction to enter *final* orders. That case in no way impacted this Court's authority to hear non-core related to proceedings. Accordingly, if and when this matter proceeds to final judgment, this Court will "submit proposed findings of fact and conclusions of law to the district court," subject to the entry of a final judgment by the district court after review pursuant to 28 U.S.C. § 157(c)(1). *See also* LR, D. Mass. 206.[6]

### B. Fed. R. Civ. P. 12(b)(6): Dismissal for Failure to State a Claim

Federal Rule of Civil Procedure 8(a)(2), made applicable by Federal Rule of Bankruptcy Procedure 7008, requires only that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." In deciding a motion to dismiss for failure to state a claim for relief under Rule 12(b)(6), the Court must accept the averments in the complaint as true and determine whether those alleged facts are sufficient to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 570 (2007); *see also Langadinos v. Am. Airlines, Inc.*, 199 F.3d 68, 69 (1st Cir. 2000). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (citing *Twombly,* 550 U.S. at 556). In determining whether the Debtor's claims should be dismissed, the Court will therefore consider the "well-pleaded factual allegations" in the complaint, "assume their

---

[6] Because the Court's order on the Motion will dismiss some, but not all, of the Debtor's claims, it will not constitute a "final" order and the Court retains jurisdiction to rule on the Motion without the submission of proposed findings of fact and conclusions of law to the district court. *Canadian Pacific Ry. Co. v. Keach*, 2017 WL 4845733, *2 (Bankr. D. Me. Oct. 26, 2017) ("Where . . . the Bankruptcy Court issues an order or decree in a non-core proceeding that dismisses some, but not all of the claims, the order is interlocutory.") (citing *Fleet Data Processing Corp. v. Branch (In re Bank of New England Corp.)*, 218 B.R. 643, 647 (B.A.P. 1st Cir. 1998)).

9

veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679.

### 1. Count 1 - Breach of Contract

The Debtor argues that the execution of the Mortgage created both contractual and fiduciary obligations toward the Debtor and that Citizens breached those obligations by failing to provide accurate information, making false or misleading statements regarding the status of the mortgage loan, and failing to properly administer the loan. The Court agrees with Citizens that, while the execution of the Mortgage may have given rise to contractual duties on Citizens' behalf, those contractual obligations did not give rise to any fiduciary relationship between Citizens and the Debtor. *See FAMM Steel, Inc. v. Sovereign Bank,* 571 F.3d 93, 102 (1st Cir. 2009) (under Massachusetts law, neither a mortgage holder nor its servicer owes a fiduciary duty to a borrower). The Court *does* find, however, that the complaint alleges facts sufficient to plausibly state entitlement to relief for breach of contract.

First, while the Debtor fails to point to any provision in the Mortgage that explicitly required Citizens to provide accurate information to the Debtor, paragraph 2 of the Mortgage requires Debtor, as a mortgagor, to "promptly pay when due principal and interest on the debt evidenced by the Note," and paragraph 3 describes how Citizens may apply payments it receives under the Mortgage and Note. These concomitant obligations could, theoretically, give rise to a breach of contract claim based on Citizens' alleged failure to accept and apply mortgage payments tendered by the Debtor.

More importantly, however, the Court finds that the Debtor has adequately stated a breach of contract claim for Citizens' alleged breaches of the underlying Note, since the Debtor qualifies

as a third-party beneficiary of that contract. Paragraph 1 of the Mortgage, titled "Loan Benefits Mortgagor Even if Mortgagor is Not Also a Maker of the Note" contains the following provision:

> If a Mortgagor is not also a maker of the Note, such Mortgagor further agrees that (i) the funds advanced by the Lender under the Note shall be considered as advanced for the benefit of such Mortgagor and (ii) such Mortgagor shall be liable for the debt evidenced thereby, as if such Mortgagor had signed the Note . . . .

Both Massachusetts law and federal common law follow the Restatement (Second) of Contracts to assess the rights of third-party contract beneficiaries.[7] With regard to intended beneficiaries of a contract, the Restatement explains:

> Unless otherwise agreed between promisor and promisee, a beneficiary of a promise is an intended beneficiary if recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties and either (a) the performance of the promise will satisfy an obligation of the promisee to pay money to the beneficiary; or (b) the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance . . . .

Restatement (Second) of Contracts § 302 (1981). While a merely incidental beneficiary acquires no rights against the contracting parties, an *intended* beneficiary of a promise has standing to enforce a duty of performance. *See id.* §§ 304, 315; *Miller v. Mooney,* 431 Mass. 57, 62, 725 N.E.2d 545 (2000). An intended beneficiary need not be specifically named in the contract so long as he or she falls "within a class clearly intended by the parties to benefit from the contract." *Mylan Labs.,* 357 F. Supp. 2d at 326; *see also Klamath,* 204 F.3d at 1211.

Generally, the "intent of the contracting parties is the central inquiry in determining whether a nonparty may maintain an action as a third-party beneficiary. . . . If the terms of the

---

[7] *See, e.g. Klamath Water Users Protective Ass'n v. Patterson,* 204 F.3d 1206, 1210–11 (9th Cir. 1999) (federal common law); *Public Serv. Co. of N.H. v. Hudson Light & Power Dep't,* 938 F.2d 338, 341 (1st Cir. 1991) (citing *Rae v. Air–Speed, Inc.,* 386 Mass. 187, 194–95, 435 N.E. 2d 628 (1982)) (Massachusetts law); *Massachusetts v. Mylan Labs.,* 357 F.Supp.2d 314, 326 (D. Mass. 2005) (federal common law); *Harvard Law Sch. Coalition for Civil Rights v. President & Fellows of Harvard Coll.,* 413 Mass. 66, 71, 595 N.E. 2d 316 (1992) (Massachusetts law). Because Massachusetts and federal common law both follow the Restatement with respect to determining the rights of third party beneficiaries, federal common law analyses may be helpful in predicting how a Massachusetts court would rule in analogous situations.

contract are clear, the parties' intent is ascertained from the contract itself." *Markle v. HSBC Mortg. Corp. (USA)*, 844 F. Supp. 2d 172, 181 (D. Mass. 2011). Here, paragraph 1 of the Mortgage explicitly acknowledges that the benefits of the underlying Note (the funds advanced) were intended to benefit the Debtor. Furthermore, although Citizens' recourse is limited vis-à-vis the Debtor, that paragraph makes the Debtor liable for the debt as if she had signed the Note. Under these circumstances, the Court finds it clear that the Debtor was an intended beneficiary of the underlying Note and entitled to enforce its terms and Citizens' contractual obligations thereunder.

The Note specifically states that payments "may be mailed *or made at any Citizens Bank office during regular banking hours*" (emphasis supplied). The complaint alleges that on at least one occasion after July 2014, the Debtor was informed by a Citizens employee that Citizens was not prepared to accept further payments from the Debtor at the branch location. The Court need go no further. Based on the plain allegations in the complaint and the language of the Note and Mortgage, the Court finds that the complaint has sufficiently stated a claim for breach of contract and the Motion will be denied as to Count I.

    2.    *Count II – Breach of the Implied Covenant of Good Faith and Fair Dealing*

Under Massachusetts law, "[e]very contract implies good faith and fair dealing between the parties to it." *T.W. Nickerson, Inc. v. Fleet Nat'l Bank,* 456 Mass. 562, 569–70, 924 N.E.2d 696 (2010) (quoting *Anthony's Pier Four, Inc. v. HBC Assocs.*, 411 Mass. 451, 471, 583 N.E.2d 806 (1991)). The implied covenant provides that "neither party shall do anything that will have the effect of destroying or injuring the right of the other party to the fruits of the contract." *Id.* at 570 (quoting *Anthony's Pier Four,* 411 Mass. at 471–72). "A breach occurs when one party violates the reasonable expectations of the other." *Chokel v. Genzyme Corp.,* 449 Mass. 272, 276, 867 N.E. 2d 325 (2007). "In determining whether a party violated the implied covenant of good faith and

12

fair dealing, we look to the party's manner of performance. . . . There is no requirement that bad faith be shown; instead, the plaintiff has the burden of proving a lack of good faith. . . . The lack of good faith can be inferred from the totality of the circumstances." *T.W. Nickerson,* 456 Mass. at 570 (internal citations omitted).

The allegations in the complaint, taken as true, give rise to a plausible inference that Citizens breached its good faith and fair dealing obligations by failing to accept further payments at the local branch following Supinski's bankruptcy discharge and by failing to provide the Debtor with accurate information regarding the consequences of ceasing payments on the underlying Note, despite Citizens employees' knowledge that the Debtor owned the property, had signed the Mortgage, intended to continue to reside in the property, and had made payments on the underlying Note since 2006. In addition, the letter sent by Haines acknowledging that the Debtor had "expressed dissatisfaction" with being advised that she was not obligated to make payments on the loan provided no assistance to the Debtor in resolving the alleged underlying issue – the inability of the Debtor to make payments on the loan – instead referring her to an unknown and unnamed "foreclosure attorney."

Citizens' refusal to accept payments from the Debtor, combined with the allegations that the Debtor was informed that the Mortgage was "discharged," and she need not make payments at all, plausibly state a claim for breach of the implied covenant of good faith and fair dealing by depriving the Debtor of the benefits of the Note and Mortgage – namely, the ability to retain her property so long as the underlying debt was paid. Accordingly, the Court will deny the Motion with regard to Count II.

### 3. *Count III: (Additional) Breach of Obligation of Good Faith*

With regard to Count III, the Debtor's contention that Citizens also breached its obligations of good faith and fair dealing by refusing to modify the loan, that claim is easily dispatched. While the contractual relationship between Citizens and the Debtor gave rise to the implied covenants of good faith and fair dealing, that implication "cannot 'create rights and duties not otherwise provided for in the existing contractual relationship.'" *Young v. Wells Fargo Bank, N.A.*, 717 F.3d 224, 238 (1st Cir. 2013) (quoting *Ayash v. Dana-Farber Cancer Inst.*, 822 N.E.2d 667,684 (2005)). The First Circuit has held that "[i]t would therefore be an error to extend the implied covenant to encompass a duty to modify (or consider modifying) the loan prior to foreclosure, where no such obligation exists in the mortgage." *MacKenzie v. Flagstar Bank*, *FSB* 738 F.3d 486, 493 (1st Cir. 2013).

The Court can discern no obligation in either the Note or the Mortgage that would require Citizens to provide the Debtor with a loan modification or other loss mitigation alternatives, regardless of how prudent it would have been of Citizens to do so. To the contrary, paragraph 10 of the Mortgage specifically states that Citizens is not required to "otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original maker(s) of the Note or the Mortgagor or any successor in interest of the Mortgagor or of any such maker." The Note's only reference to the possibility of a loan modification simply states that the lender *may* modify the loan and needs only the consent of the party with whom the modification is made. Because the contractual documents clearly state that the decision whether or not to extend a loan modification was wholly within Citizens' discretion, the Court will grant the Motion with regard to Count III.

14

    4.  *Count IV: Misrepresentation and Count V: Violations of Mass. Gen. Laws Ch. 93A*

Counts IV and V of the complaint rely on essentially the same bases for alleging that Citizens is liable for misrepresentation and for violations of Massachusetts' consumer protection statute, Mass. Gen. Laws ch. 93A ("Chapter 93A"), which prohibits unfair and deceptive actions or practices in the conduct of any trade or commerce.[8]

In order to prevail on a claim for negligent misrepresentation, the plaintiff must prove that the defendant "(1) in the course of [its] business, (2) supplie[d] false information for the guidance of others (3) in their business transactions, (4) causing and resulting in pecuniary loss to those others (5) by their justifiable reliance upon the information, and (6) with failure to exercise reasonable care or competence in obtaining or communicating the information." *Nota Constr. Corp. v. Keyes Assocs.*, 45 Mass. App. Ct. 15, 19-20, 694 N.E.2d 401 (1998). "[T]he defendant is subject to liability if, but only if, he has failed to exercise the care or competence of a reasonable [person] in obtaining or communicating the information." *Fox v. F & J Gattozzi Corp.*, 41 Mass. App. Ct. 581, 587–588, 672 N.E.2d 547 (1996) (quoting Restatement (Second) of Torts § 552 comment e (1977)).

Similarly, "[n]egligent misrepresentation of fact the truth of which is reasonably capable of ascertainment is an unfair and deceptive act or practice within the meaning of c. 93A § 2(a)."

---

[8] The complaint does not specify whether the Debtor is alleging intentional misrepresentation or negligent misrepresentation. However, the only viable cause of action, based on the factual allegations in the complaint, is one for negligent misrepresentation. In order to establish an intentional misrepresentation claim under Massachusetts law, the plaintiff must prove: "(1) the defendant made a false misrepresentation of material fact, (2) the defendant acted with knowledge of its falsity, (3) the defendant acted with the purpose of inducing the plaintiff to act on the misrepresentation and (4) the plaintiff relied on the misrepresentation to her detriment." *International Floor Crafts, Inc., v.* Adams, 477 F. Supp. 2d 336, 341 (D. Mass. 2007) (citing *Zuckerman v. McDonald's Corp.*, 35 F. Supp. 2d 135, 144 (D. Mass. 1999)). The Debtor has alleged that she relied on Citizens' employees' representations that the Mortgage had been discharged and there was no obligation to pay, but has not alleged that any of the misrepresentations were made intentionally, with knowledge of their falsity.

*Glickman v. Brown,* 21 Mass. App. Ct. 229, 235, 486 N.E.2d 737 (1985). "A practice is deceptive "'if it 'could reasonably be found to have caused a person to act differently from the way he or she otherwise would have acted.'"" *Charest v Fed. Nat'l Mortg. Ass'n*, 9 F. Supp. 3d 114, 124, (D. Mass. 2014) (quoting *Aspinall v. Philip Morris Cos., Inc.,* 442 Mass. 381, 813 N.E.2d 476, 486 (2004)).

Contrary to Citizens' argument that no misrepresentations were made with regard to the Debtor's obligation to make payments under the Note, the Mortgage itself established the Debtor's liability for the sums advanced under the Note and required her to pay principal and interest when due. Despite these obligations, however, the Debtor alleges that a Citizens employee at the local branch informed her on at least one occasion that the debt need not be paid and that no adverse action would be taken, an allegation reiterated by Citizens' representative Blanchette in her letter verifying that the Citizens Bank Loan Department told her that the Debtor did not need to continue to make loan payments. And in her July 19, 2016 letter, Citizens employee Haines again informed the Debtor that the only person obligated to pay the loan balance was the person listed on the loan. It is reasonable to infer that Citizens could have readily ascertained that, under the plain language of the Mortgage itself, the Debtor was responsible for making payments as if she had executed the Note.

The veracity of the Debtor's allegations, the justifiability of the Debtor's reliance, and the degree to which Citizens did or did not "fail[ ] to exercise the care or competence of a reasonable [person] in obtaining or communicating the information" alleged to have been false are factual issues reserved for another day. At this juncture, the Court rules that the complaint contains

sufficient factual allegations to state a claim for negligent misrepresentation and violations of Chapter 93A,[9] and will deny the Motion with regard to Counts IV and V.

IV.    CONCLUSION

For all the foregoing reasons, the Court will DENY Citizens' Motion requesting dismissal of the complaint with regard to Counts I, II IV, and V and will GRANT the Motion as to Count III. The Motion will be DENIED AS MOOT with regard to counts VI through IX. A separate order in conformity with this Memorandum will issue forthwith.

By the Court

Dated: July 26, 2019

Elizabeth D. Katz
United States Bankruptcy Judge

---

[9] The Debtor also alleges, without elaboration, that Citizens' failure to provide the Debtor with loss mitigation alternatives, including a loan modification, violated Chapter 93A. "[Courts have held that a bank's handling of efforts to obtain a home loan modification *can* be independently actionable under Chapter 93A, *but only when the conduct is an unfair or deceptive business practice in and of itself*." *Hanrahran v. Specialized Loan Servicing, LLC,* 54 F. Supp. 3d 149, 154 (D. Mass. 2014) (emphasis supplied). However, the Debtor has not provided any specific factual allegations related to misrepresentations or unfair or deceptive business practices undertaken by Citizens in regard to any loss mitigation or loan modification efforts.

17